IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

XL SQUAD ENTERTAINMENT
LLC, a Georgia Limited Liability
Company, et al.,

    Plaintiffs,

      v.

MOUNT KENYA UNIVERSITY,
a Foreign Institution, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:16-CV-962-TWT

## OPINION AND ORDER

This is a breach of contract action. It is before the Court on the Defendants

Mount Kenya University ("MKU") and Dr. Simon N. Gicharu's Motion for Summary

Judgment [Doc. 23]. For the reasons set forth below, the Defendants' Motion for

Summary Judgment [Doc. 23] is GRANTED.

## I. Background

The Plaintiff, XL Squad Entertainment LLC, is a film production company

headquartered in Georgia.[1] The Defendant, Mount Kenya University, is an educational

---

[1]    The other named Plaintiff, Yves Tchouta, is XL Squad's CEO.

institution located in Kenya.[2] Sometime in early 2015, the parties signed a Letter of

Intent  that had been drafted by the Plaintiffs which outlined a proposed movie deal.

While the parties dispute whether the Letter of Intent was signed by the Plaintiff

Tchouta in Georgia or in Kenya, both parties agree that the Defendants signed the

Letter of Intent in Kenya, after the Plaintiff had signed it.[3]

The proposed deal would consist of three phases. In Phase I, which is the only

phase at issue here, it seems that MKU and XL Squad would be responsible for 55%

and 45%, respectively, of a $200,000 budget for a film to be titled "The Last Result."[4]

The first substantive words of the Letter of Intent described it as "non-binding."[5]

However, Section 8 of the Letter of Intent stated that:

> [e]ach Party hereby reaffirms its intention that this [Letter of Intent] as
> a whole, and is intended to constitute, a legal and binding obligation,
> contract, or agreement between the Parties, and is intended to be relied
> on by any Party as constituting such. Accordingly, the Parties agree that
> either Party to this [Letter of Intent] may unilaterally withdraw from
> negotiations or dealing at any time for any or no reason at the

---

[2]     The individually named defendant, Dr. Simon Gicharu, is the Chairman
of the Board of Directors.

[3]     Tchouta Dep. at 56.

[4]     See Provisional Agreement [Doc 23-2] at 27-33.

[5]     Id. at 27.

withdrawing Party's sole discretion by notifying the other Party of the withdrawal in writing.[6]

The Letter of Intent presupposed a final contract, stating that "all Parties are willing to proceed in mutual good faith to work toward the Final Agreement and a closing consistent with these terms."[7] The parties agreed that "[u]nless and until otherwise agreed in writing, both parties shall be responsible for their respective expenses...incurred in connection with this [Letter of Intent], regardless of whether or not this Proposed Transaction is consummated."[8] And the parties also agreed to a non-disclosure provision, stating that "neither Party shall make any public disclosure about the Proposed Transaction contemplated by this [Letter of Intent] before the Closing Date without the prior written approval of the other Party," with the Closing Date being set as January 23, 2015.[9] This was the last agreement signed by the parties.[10]

Eventually, representatives from MKU came to visit the Plaintiffs in Atlanta, and were apparently unhappy with what they found. MKU sent a letter on July 29,

---

[6]     Id. at 32.

[7]     Id. at 28.

[8]     Id. at 32.

[9]     Id. at 31-32.

[10]     The Plaintiffs argue that they did come to a Final Agreement, but cites to nothing in the record to support this allegation.

2015, withdrawing from the Letter of Intent because it believed the Plaintiffs had made misrepresentations to it.[11] But according to the Plaintiffs, XL Squad had already incurred costs upwards of $170,000 in furtherance of the deal by the time the Defendants sent the letter.[12] The Plaintiffs then filed this suit on March 25, 2016, alleging breach of contract, trademark and copyright infringement, and various other claims.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[13] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[14] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[15] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to

---

[11]     Defs.' Statement of Material Facts ¶ 18.

[12]     Compl. ¶ 45.

[13]     FED. R. CIV. P. 56(a).

[14]     Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[15]     Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

show that a genuine issue of material fact does exist.[16] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[17]

## III. Discussion

### A. Contract Related Claims (Counts I-II, VIII)

Before moving forward on any of the claims, the Court must first determine if there is even a contract. Georgia law follows the traditional approach to conflict of laws in contracts and looks to the *lex loci contractus*.[18] Under the traditional approach, the *lex loci contractus* is determined by the last act essential to the completion of the contract.[19] Generally speaking, that is wherever the contract is signed. In this case, the parties dispute whether the Plaintiff Tchouta signed the Letter of Intent in Georgia or Kenya. Both parties cite to Georgia law which the Court will apply by default.

The question in this case is whether the parties intended to be bound by the Letter of Intent or not. At various times, the document expressly states that it is non-binding. But at other times, it seems to directly contradict itself, stating that it "*is*

---

[16]    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[17]    Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

[18]    General Telephone Co. of Southeast v. Trimm, 252 Ga. 95, 96 (1984).

[19]    Id.

intended to constitute, a legal and binding obligation, contract or agreement between the Parties...."[20] Clearly, these different provisions of the contract conflict with one another.  Georgia law looks to the document as a whole in interpreting conflicting provisions. In this case, the parties seem to have anticipated some sort of Final Agreement that would be signed between them. They also provided for either party to unilaterally withdraw from the deal "at any time" and "for any or no reason." The presence of these clauses seems to indicate that the parties did not mean to be bound by the terms of the proposed deal beyond their good faith efforts to negotiate. Rather, the Letter of Intent simply stood as an outline for a future final agreement. The Plaintiffs argue that the parties only had the right to withdraw until January 23, 2015. But the sentence the Plaintiffs seem to be citing only lists out certain consequences if a party decides to withdraw by that date. There is no sentence in that section that limits the right to withdraw in any way. In essence, nothing about the deal was enforceable. The Court therefore finds that no contract existed as it relates to the terms of the movie project itself, and the breach of contract claim must fail.

The Plaintiffs' claim for implied contract must also fail because there is simply no evidence on the record to suggest that the Defendants offered to pay the entire budget of the film. The only evidence on the record is the Letter of Intent, which

---

[20]     Provisional Agreement [Doc 23-2] at 32 (emphasis added).

outlines an agreement on terms subject to further negotiation that in fact expressly operates against the Plaintiffs' assertion otherwise. "[T]he law will not imply a promise contrary to the intention of the parties."[21] Furthermore, "[t]he concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received...."[22] Even if the Plaintiffs' unsupported allegation was true and the Defendants promised to pay the full $200,000, there is no evidence to suggest that the Defendants have received anything of value up until this point. Assuming *arguendo* that they did reach a final agreement, the Defendants contracted for a movie and a script, neither of which seems to have been given to them. Thus, the implied contract claim also fails.

For the same reason, the Plaintiffs' claim for unjust enrichment is also wanting. Unjust enrichment claims lie where there is no contract, but where the party charged has been conferred a benefit which they ought to compensate for. In this case, the Plaintiffs have shown no evidence to suggest that the Defendants have received anything of value. The motion on Count VIII is therefore granted.

**B. Fraud (Count III)**

---

[21]     Scott v. Mamari Corp., 242 Ga. App. 455, 458 (2000) (citations omitted).

[22]     Id.

The Plaintiffs also allege a claim of fraud. "To prevail on a claim for fraud and deceit, a plaintiff must show: (1) a false representation by the defendant; (2) scienter; (3) intention to induce the plaintiff to act or to refrain from acting; (4) justifiable or reasonable reliance; and (5) damage."[23] The Plaintiffs have offered no evidence of any sort of false representation other than continued conclusory allegations.[24] The only allegation that is remotely an assertion of fact seems to be that the Defendants fraudulently offered to pay the full $200,000 budget for the film. But again, the Plaintiffs have offered no evidence that such an offer was ever given. As a result, the Plaintiffs' fraud claim fails.

## C. Copyright and Trademark Infringement (Counts IV-V)

The Plaintiffs' intellectual property claims also fail. Although "registration is not a condition of copyright protection...registration (or a refusal of registration) of a United States work is a prerequisite for bringing an action for copyright infringement..."[25] The Plaintiffs have provided no evidence that they registered the copyright. Regarding the trademark claim, the Plaintiffs never say in the Complaint

---

[23] Bender v. Southtowne Motors of Newnan II, Inc., No. A16A0784, 2016 WL 6747298, at *7 (Ga. Ct. App. Nov. 15, 2016) (citing Paulk v. Thomasville Ford Lincoln Mercury, 317 Ga. App. 780, 782 (1) (2012)).

[24] See, e.g., Compl. ¶¶ 64, 66, 69.

[25] Kernel Records Oy v. Mosley, 694 F.3d 1294, 1301 (11th Cir. 2012).

whether they are suing under federal or state trademark law. Under Georgia law, registration is also a prerequisite to a trademark infringement suit, though this is not the case under federal law. Since the Plaintiffs have provided no evidence that their trademark was registered, the Court will assume that the Plaintiffs meant to sue under federal law.[26]

In order to prove infringement under federal law, "the holder of a registered trademark must show (1) that the infringer used the mark in commerce, without the trademark holder's consent, and (2) that the use was likely to cause confusion."[27] "Any unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant may constitute a trademark infringement."[28] In this case, the Court finds that there is no way a jury could find a reasonable basis to conclude that consumers would be confused or misled about the nature of the parties' relationship. The conduct the Plaintiffs seem to be complaining of is MKU's announcement that XL Squad had partnered with MKU to

---

[26]    See ITT Corp. v. Xylem Group, LLC, 963 F. Supp. 2d 1309, 1326 (N.D. Ga. 2013) ("Registration of a service mark or trademark is a prerequisite for relief under O.C.G.A. § 10–1–450.").

[27]    Id. at 1318 (citing Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC, 605 F.3d 931, 934 (11th Cir. 2010)).

[28]    Computer Currents Pub. Corp. v. Jaye Commc'ns, Inc., 968 F. Supp. 684, 687 (N.D. Ga. 1997) (citing Burger King Corp. v. Mason, 710 F.2d 1480, 1491 (11th Cir. 1983)).

create "The Last Result." But what XL Squad seems to forget is that the parties had

*actually partnered* to do just that. Although the Letter of Intent was non-binding and

an outline of an agreement, they were partners at the time. The public cannot be

misled into thinking something that is true. For these reasons, the Defendants' motion

on the intellectual property claims is granted.

## D. False Advertising and Right of Publicity (Counts VI-VII)

Federal law prohibits the commercial use of a person's name in such a way that

is likely to cause confusion or mislead others about the nature of that person's

sponsorship or affiliation with another.[29] XL Squad alleges that MKU falsely

advertised their relationship in two ways: (1) by using XL Squad's marks and logos

in announcements and advertisements for the college, and (2) by allegedly describing

Tchouta as a professor at MKU. As to the first instance, the Court has already

described above that this was not false or misleading because it was true. And as to

the second instance, XL Squad has provided no evidence and has cited to nothing in

the record to support its allegation. That same lack of evidence not only dooms the

Plaintiffs' false advertising claim, but also the claim for violation of the right of

publicity. There is simply no evidence to suggest that MKU misappropriated the

Plaintiffs' likeness. And the only evidence on record suggests that if and when MKU

---

[29]    See 15 U.S.C. § 1125.

did use the Plaintiffs' likeness or marks, that it did so truthfully and with the Plaintiffs' consent.[30] For these reasons, the motion on Counts VI-VII is granted.

**E. Georgia Fair Business Practices Act (Count IX)**

The Defendants lastly move for summary judgment on the Plaintiffs' Fair Business Practices Act (FBPA) claim.[31] Under the Georgia FBPA, a consumer may bring an action against a business for engaging in "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."[32] In order to succeed, a plaintiff must: (1) be a consumer, (2) show a violation, and (3) have suffered damages.[33] The Plaintiffs in this case fail to show any of these three elements. They are not consumers; rather, they are the Defendants' business partners. Even if the Plaintiffs were consumers, the Defendants' actions did not violate the statute. In order to do so, the Defendants must have "done some volitional act to avail [themselves] of the channels of consumer commerce."[34]

---

30 Tchouta Dep., Ex. 5.

31 The Plaintiffs never responded to the Defendants' motion on this count.

32 O.C.G.A. § 10–1–393(a).

33 See Friedlander v. PDK Labs, Inc., 266 Ga. 180 (1996) (holding that FBPA actions are limited to consumers, violations only occur in consumer related transactions, and that damages are required).

34 State of Ga. v. Meredith Chevrolet, 145 Ga. App. 8, 12 (1978).

The Defendants merely advertised that they were partnering with the Plaintiffs in an educational venture and film. Additions to the curriculum are not consumer related commerce. Nor have the Defendants misled the public. As discussed above, they were actually partners at the time they made their announcements. And lastly, the Plaintiffs have failed to show that they suffered any damages. The Defendants' motion on Count IX of the Complaint is therefore granted.

## IV. Conclusion

For the foregoing reasons, the Defendants' Motion for Summary Judgment [Doc. 23] is GRANTED.

SO ORDERED, this 30 day of December, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge